THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:07-CR-149-FL

| UNITED STATES OF AMERICA | ) |
| --- | --- |
| | ) |
| v. | ) |
| | ) **MEMORANDUM & RECOMMENDATION** |
| TIMOTHY MANNING | ) |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the court on Defendant Timothy Manning's Motion to Suppress. [DE- 14]. The government has responded, [DE-17], and the court held an evidentiary hearing on September 24, 2007, to develop the record. At the September 24, 2007 hearing, the court heard testimony from Robert Pereira, an officer with the Raleigh Police Department who initiated the stop and subsequent arrest of Defendant, and H.G. Alexander, another officer with the Raleigh police department who was with Officer Pereira for some part of Manning's interview and detention. Defendant Manning elected not to testify or offer any evidence other than argument. Accordingly, this matter is ripe for review.

## STATEMENT OF THE FACTS

On the morning of March 21, 2007, at approximately 11:30 am, Manning was walking on the sidewalk along Branch Street in Raleigh. Branch Street abuts Walnut Terrace, a public-housing development of the Raleigh Housing Authority. Officer Pereira and Officer Alexander were driving along Branch Street when Officer Pereira saw a black

1

man whom he did not recognize, walking by himself, and who was later identified as Manning. Officer Pereira drove up to Manning and rolled down his window to talk to him. Officer Pereira exchanged pleasantries with Manning and asked Manning if he lived in the community. Manning said he did not live in the community but had been visiting a friend who lived on Branch Street and was on his way to the bus stop. Officer Pereira exited his vehicle and told Manning that he was trespassing on City of Raleigh property. Officer Alexander also exited the vehicle and watched the encounter between Manning and Officer Pereira. Manning told Officer Pereira that he did not know about the trespassing rules and Officer Pereira told Manning that Walnut Terrace had a no-trespassing policy and that non-residents had to be invited onto the premises by a resident. Officer Pereira then asked Manning to sit on the curb while he determined Manning's identity so that he could charge Manning with second degree trespass. Manning complied, and sat on the curb.

Officer Pereira asked Manning if he had identification. Manning said that he had a North Carolina identification card but did not have the card on him. Officer Pereira asked Manning his name and date of birth. Manning replied that his name was Charlie Manning and his date of birth was January 25, 1982. Officer Pereira ran the name and date of birth through two databases, the North Carolina Department of Motor Vehicles database and the CHIEFS database, which is a database that provides information regarding arrests, warrants, pistol permits, and other information. The databases did not recognize an individual with that name and date of birth.

Officer Pereira asked Manning to clarify his name. Manning again said that his name was Charlie Manning, but stated that his birthday was actually in June. Officer Pereira entered the new information but the databases did not come up with a match for

an individual with that name and date of birth either. Accordingly, Officer Pereira asked Manning for a third time to state his name and date of birth. Manning reverted back to his original answer, stating that he was born in January. Officer Pereira stated that after asking Manning for the third time for identifying information, it became clear to him that Manning was lying. In addition, Manning's demeanor was becoming increasingly more nervous, his eyes were wide, he was looking around, and his movements were jerky.

At that point, Officer Pereira told Manning that he planned to handcuff Manning until Manning's identity could be ascertained, stating that he was worried about Manning's safety as well as his own. Manning then told Officer Pereira that he did have his identification card on him, which he took from his wallet and gave to Officer Pereira. Officer Pereira placed Manning in handcuffs and asked Manning if he had any contraband on him. Manning stated that he had a gun in his pocket. Officer Pereira removed a .32 caliber Smith & Wesson revolver from Manning's back pocket and advised Manning that he was under arrest for trespassing, resisting/delaying an officer, and carrying a concealed weapon.

At sometime during the encounter between Officer Pereira and Manning, Officer Alexander noticed a woman coming out of one of the apartment buildings nearby. He approached her, and the woman told Officer Alexander that Manning had been visiting her, and the she was a resident of Walnut Terrace. Officer Alexander returned to Officer Pereira and Manning and told Officer Pereira that Manning had been visiting a resident of Walnut Terrace. Neither Officer Alexander nor Officer Pereira could remember if it was before or after Officer Pereira handcuffed Manning that Officer Alexander let Officer Pereira know that Manning permissibly had been visiting a resident.

## DISCUSSION

Manning is charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924. In his Motion to Suppress, Manning claims that Officer Pereira did not have reasonable suspicion to detain him. Accordingly, Manning contends that evidence stemming from his detention and subsequent arrest should be suppressed.

1. Encounter Was Consensual

Initially, the court must decide whether the police effectuated a stop sufficient to implicate the Fourth Amendment. See Florida v. Bostick, 501 U.S. 429, 434 (1991) (noting that an encounter between police and an individual "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature"). Under the Fourth Amendment to the United States Constitution, people shall "be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. . . ." U.S. Const., amd. IV. The purpose of the Fourth Amendment is to ensure that police and other government officials do not arbitrarily and oppressively interfere with a person's right to privacy. See INS v. Delgado, 466 U.S. 210, 215 (1984).

Accordingly, the court must determine if and when a seizure took place. "It is axiomatic that police may approach an individual on a public street and ask questions without implicating the Fourth Amendment's protections." United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002). A person is seized only when a police officer restricts the person's freedom of movement by means of physical force or show of authority. United States v. Mendenhall, 446 U.S. 544, 553 (1980). However, interactions between individuals and police that begin as constitutional encounters may metamorphose into unconstitutional seizures.

When Officer Pereira and Officer Alexander first pulled their vehicle over to talk to Manning, the encounter was constitutional. A seizure under the Fourth Amendment does not occur when the police approach an individual and ask a few questions "[s]o long as a reasonable person would feel free to disregard the police and go about his business." Bostick, 501 U.S. at 434 (internal quotations omitted). Officer Pereira's exchange of pleasantries with Manning, his questions regarding whether Manning lived in Walnut Terrace and what Manning was doing in the neighborhood, all constitute a permissible Bostick stop because police officers are allowed to approach individuals and ask questions about who they are and what they are doing. Id. at 434. However, at some point during the interaction between Officer Pereira and Manning, a seizure took place. The government argues that Manning was seized only when he was placed in handcuffs. Manning, however, argues that the seizure took place when Officer Pereira asked him to sit on the curb so that he could identify Manning and charge him with trespassing. When the seizure took place is crucial to determining its constitutionality because Officer Pereira stated that the combination of Manning's untruthful answers, his nervous behavior, and his knowledge that Walnut Terrace is a high crime area constituted the reasonable suspicion necessary to detain Manning. However, Manning gave the untruthful information about his name and date of birth and exhibited nervous behavior only <u>after</u> he had been asked to sit on the curb.

In order to determine whether Manning was seized when Officer Pereira asked him to sit on the curb, the court must determine whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Mendenhall, 446 U.S. at 554. A court may consider numerous factors in

5

determining whether an individual would believe that he or she was free to leave, including, "the time place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the officer's statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen." Weaver, 282 F.3d at 310.

In this case, many of the above listed factors were not present. Two uniformed officers approached Manning after getting out of their squad vehicle and Officer Pereira began questioning Manning and asked him to sit on the curb. Nonetheless, the encounter occurred during the day, on a public sidewalk, the officers did not display their weapons and they did not physically touch Manning until Officer Pereira put him in handcuffs. Officer Pereira testified at the hearing that his tone was conversational when he asked Manning to sit, and that he requested but did not command Manning to do so. As both the Fourth Circuit and the Supreme Court have made clear, police officers may ask citizens to provide identifying information, to accompany the police to a specific place, and to search a citizen's belongings. See Weaver, 282 F.3d at 312-13 (upholding the denial of a motion to suppress because although the police retained defendant's identification when asking him to accompany them to various banks that they suspected defendant of having robbed, the defendant could have asked for his identification back and walked away from the encounter at any time); Bostick, 501 U.S. at 439 (remanding back to the district court to determine whether a police officer's questioning of defendant and request to search his bags on a bus constituted a seizure for Fourth Amendment purposes in light of the totality of the circumstances).

6

However, there is one aspect of Officer Pereira's incident report that could be construed as essentially effectuating a seizure. In his incident report describing the encounter, Officer Pereira wrote, "I asked him to sit on the curbline while I determined his identity <u>so that I could charge him</u> appropriately for second degree trespass." That statement could be read to mean that Officer Pereira asked Manning to sit on the curb and told Manning that he needed to identify him because he was going to charge Manning for a crime–second degree trespassing. If a police officer asks a person to remain where the person is, because the officer is going to charge the person with criminal conduct, a reasonable person would not feel free to leave the scene. In fact, if a person being charged with a crime decides to leave, a police officer may detain the person and cite him or her for resisting and leaving the scene. See N.C. Gen. Stat. § 14-223 (providing that "if any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor"). As the Fourth Circuit has put it "the citizen would have to choose between the Scylla of consent to the encounter or the Charybdis of . . . [leaving] and risk being cited" for resisting an officer. <u>Weaver</u>, 282 F.3d at 311.

However, when asked at the hearing whether Officer Pereira told Manning that he was going to be cited for a crime, Officer Pereira answered in the negative. Because Officer Pereira unequivocally stated that he did not let Manning know that he planned to cite Manning for trespassing when he asked Manning to sit on the curb, the court must construe the incident report as describing Officer Pereira's thought process in asking Manning to sit on the curb. Accordingly, it is the court's opinion that the encounter up until the time when Manning was placed in handcuffs, was consensual and did not implicate

7

Fourth Amendment concerns. Manning, at any time, could have walked away and ended the encounter. Although walking away may have created an awkward situation, "awkwardness alone does not invoke the protections of the Fourth Amendment. . . ." Weaver, 282 F.3d at 311-12. Whether or not Officer Pereira would have followed Manning and detained him if Manning had decided to leave, or whether Officer Pereira could have legally done so, since Officer Alexander determined that Manning had been visiting a resident of Walnut Terrace who invited Manning onto the property and told Officer Pereira this information, is of no consequence. Under existing precedent, Manning was free to end the encounter even after Officer Pereira asked him to sit on the curb, therefore, the encounter was consensual. However, when Officer Pereira placed Manning in handcuffs, he physically detained him, accordingly, the court must consider whether that detention was proper.

2. Reasonable Suspicion Existed at time of Detention

Because Manning was seized within the meaning of the Fourth Amendment when Officer Pereira handcuffed him, the court must next consider whether Officer Pereira had reasonable suspicion to effectuate the detention. The Supreme Court has held that an officer may conduct a brief investigatory stop where the officer has reasonable suspicion that "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). Reasonable suspicion, under Terry, is a less exacting standard than that of probable cause, but requires "at least a minimal level of objective justification." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Accordingly, an officer may not permissibly detain a person in an investigatory stop based on a mere "hunch." Terry, 392 U.S. at 27. Instead a Terry stop "must be justified by some objective manifestation that the person stopped is, or is about

8

to be, engaged in criminal activity". United States v. Cortez, 449 U.S. 411, 417 (1981).

When Officer Pereira handcuffed Manning, Manning had told him that he was born in January, then June, then January again. In addition, Manning told Officer Pereira that he had a North Carolina identification card, but the DMV database, which searches North Carolina drivers licenses and well as identification cards, did not recognize a person by the name of Charlie Manning with either birthday provided. In addition, Officer Pereira testified that Manning was becoming increasingly more nervous and uneasy. Finally, Officer Pereira knew the area to be a high crime area and that he had been previously assaulted in Walnut Terrace.

The court must consider "the totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal quotations omitted). Moreover Officer Pereira was "entitled to make an assessment of the situation in light of his specialized training and familiarity with the customs of the area's inhabitants." Id. at 276. Because it was clear that Manning was not telling the truth, that he exhibited signs of extreme nervousness and that Officer Pereira, as an experienced Raleigh police officer, knew that Walnut Terrace is a high-crime area, it is the court's opinion that Officer Pereira had reasonable suspicion to conclude that Manning already had or was about engage in criminal activity. See United States v. Foreman, 369 F.3d 776, 785 (4th Cir. 2004) (noting that unusual conduct, extreme nervousness, the officer's experience, among other factors was sufficient to provide reasonable suspicion for a Terry stop).

Moreover, when Officer Pereira placed Manning in handcuffs, he effectuated a Terry stop, and did not place Manning under arrest. Under Fourth Circuit precedent, an officer

9

may completely restrict the liberty of a suspect for a brief period of time without arresting the suspect. See United States v. Moore, 817 F.2d 1105, 1108 (4th Cir. 1987). A Terry stop differs from an arrest and custodial interrogation because an officer should use the least intrusive means available to either verify or dispel his or her suspicion in a brief period of time. See Florida v. Royer, 460 U.S. 491, 500 (1983). Placing a suspect in handcuffs does not necessarily elevate a Terry stop into an arrest. See United States v. Leshuk, 65 F.3d 1105, 1109-1110 (4th Cir. 1995). Here, Officer Pereira placed Manning in handcuffs, asked if he had contraband and found the gun in a very short time frame. Accordingly, Manning's liberty was completely restricted for a brief period until Officer Pereira was able to verify his suspicion of criminal wrongdoing. As a result, the seizure was proper.

## CONCLUSION

For the reasons set forth above, the court **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 4th day of October 2007.

_____
DAVID W. DANIEL
United States Magistrate Judge