IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-cr-149-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TIMOTHY MANNING, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on memorandum and recommendation ("M&R") of United States Magistrate Judge David W. Daniel (DE #25) submitted subsequent to evidentiary hearing on September 24, 2007 and recommending that this court deny defendant's motion to suppress. Defendant filed objections to M&R (DE #28), to which the government has responded (DE #30). In this posture, issues raised are ripe for adjudication, and for the reasons discussed herein, the court substantially adopts M&R and denies defendant's motion to suppress.

## BACKGROUND

Defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924. The court adopts the factual findings made in M&R, and only presents a brief summary of the events in question.

At approximately 11:30 a.m. on the morning of March 21, 2007, defendant was walking on the sidewalk along Branch Street in Raleigh, near the Walnut Terrace public housing development owned and operated by Raleigh Housing Authority. Defendant was approached by two police

officers riding in a patrol car and one of the officers, Officer Pereira of the Raleigh Police Department, spoke with defendant asking him among other things for his name and identification. Subsequent to this conversation, during which defendant provided a false name and date of birth, defendant was detained, handcuffed, and shortly thereafter, arrested. After defendant was detained and handcuffed but prior to arrest, Officer Pereira asked defendant if he had any contraband and defendant admitted that he had a gun in his back pocket. It is with possession of the .32 caliber revolver found in defendant's back pocket that defendant is now charged.

On August 22, 2007, defendant filed a motion to suppress the handgun and defendant's statements made relating to the handgun as the fruits of an improper seizure of defendant. In his motion, defendant's sole argument amounted to an allegation of lack of reasonable suspicion to support law enforcement initiation of the type of citizen-police encounter that has come to be known as a Terry[1] stop. Defendant relied primarily for authority on United States v. Cortez, 449 U.S. 411 (1981), a case involving a traffic stop in the Arizona desert.

On September 5, 2007 the government filed response to defendant's motion, attaching a lengthy list of supporting exhibits including Officer Pereira's police report of the incident, an analysis of public safety calls for service received from the Walnut Terrace public housing development, and a photograph of a "No Trespassing" sign, presumably from Walnut Terrace. The government argued that the citizen-police encounter in question began as a consensual Bostick[2] encounter and did not segue into actual detention until after Officer Pereira had developed adequate and reasonable suspicion to support brief detention. Once Officer Pereira had developed such

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

[2] United States v. Bostick, 501 U.S. 429 (1991).

2

suspicion, the government further contended, it was permissible both for Officer Pereira to handcuff defendant and also to ask defendant if he possessed any contraband.

The magistrate judge held a hearing on defendant's motion on September 24, 2007, and issued his M&R on October 4, 2007. Defendant filed objections to the M&R on October 14, 2007, and government filed a response in support of M&R on October 26, 2007.

In the M&R, the magistrate judge held that 1) the initial encounter between defendant and Officer Pereira was a consensual Bostick encounter and 2) by the time Officer Pereira handcuffed defendant, the officer had developed sufficient reasonable suspicion to support detention.

Defendant raised two objections to the M&R. In his first objection defendant argued that he was approached on a public sidewalk because the officers suspected him of trespassing on nearby, private property and thus, once he had given the officers a valid reason for having been on private property at Walnut Terrace, the encounter should have ended. Defendant also argued that the law enforcement officers made a "show of force" by exiting their vehicle to speak with defendant and therefore, from that moment on, defendant reasonably believed he was not free to leave. In his second objection defendant reiterated his argument that his valid excuse for being in the area effectively vitiated Officer Pereira's reasonable suspicion. Defendant also claimed that Officer Pereira had formed the intent to arrest defendant by the time he exited his patrol car and therefore, defendant was effectively detained from that time onward. In short, defendant attempts to place time of detention much earlier in the encounter, before Officer Pereira had time to formulate a reasonable suspicion.

The government responded to defendant's first objection by noting that law enforcement officers need "no objective justification whatsoever" to initiate a consensual Bostick encounter. U.S.

3

v. Brown, 401 F.3d 588, 592 (4th Cir. 2005). The government also noted that the officers' subjective intent as they exited their patrol car was immaterial, and that a court attempting to discern whether or not defendant felt free to walk away from the encounter need only concern itself with the objective and outwardly observable behavior of the officers. In response to defendant's second objection, the government noted that it was essentially a restatement of the first objection, and thereafter reiterated its own arguments in support of Officer Pereira's actions.

## DISCUSSION

In order to rule on this motion, the court must assess both the nature of the encounter between law enforcement officers and defendant, and the validity of Officer Pereira's suspicion.

The nature of the encounter is governed by a substantial array of case law that establishes, to the extent possible, the minimum requirements for police initiated citizen-police encounters in public. In United States v. Bostick, the Supreme Court made it clear that:

> a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.

501 U.S. at 434 (internal citation and quotation omitted).

With his first objection to the M&R, defendant essentially conceded the consensual nature of the initial encounter. Defendant merely reiterated his original theory that exiting the patrol car amounted to a show of force and asserted without support that law enforcement officers involved may have sent intimidating "nonverbal cues" that caused defendant to believe the encounter was no longer consensual.

Defendant's unsupported argument fails to engage the magistrate judge's well reasoned and

4

thoughtful application of law to facts. For reasons fully given in the M&R, this courts adopts the magistrate judge's finding that the citizen-police encounter at issue continued to be a consensual one until well after law enforcement officers exited their vehicle and defendant was asked to sit on the curb.

Although the initial encounter was consensual, there is no doubt that at some point defendant could no longer reasonably believe that he was free to leave. At that point in time, defendant was effectively "detained" and the law requires that Officer Pereira be able to articulate a reasonable suspicion that some type of criminal activity was "afoot" prior to such detention. Terry, 392 U.S. at 30.

As a result of his examination of the facts and relevant Fourth Amendment case law, the magistrate judge isolated the time of detention as the moment when the handcuffs were placed on defendant's wrists. This court concurs, however, with the government, which very precisely establishes the exact moment that detention–and therefore "seizure" invoking Fourth Amendment protection–occurred. As the transcript of the September 24, 2007 hearing shows, it was not until after Officer Pereira told defendant that he was going to be handcuffed that defendant produced a valid North Carolina identification card. Because a reasonable person would have ceased to believe that he was free to leave when told by a law enforcement officer that he was about to be handcuffed, this court finds that the production of the identification card–and the additional suspicion it no doubt prompted in Officer Pereira's mind–came after the seizure.

The distinction is of little import however, because, as the M&R makes clear, the hearing testimony provides more than adequate indicia of Officer Pereira's reasonable suspicion prior to his announcement that he intended to handcuff defendant. By that time, Officer Pereira had made three

5

fruitless attempts to confirm defendant's identity in two law enforcement databases including one which lists all valid North Carolina identification cards. It must have been obvious to him at that time that defendant was lying either about his identity or about the fact that he possessed a North Carolina identification card. In either case, Officer Pereira had at the very least a reasonable suspicion that defendant had violated North Carolina General Statute § 14-223 (providing that "[i]f any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor").

In addition, defendant was by time of seizure exhibiting outward physical signs of panic. His nervousness further bolsters Officer Pereira's reasonable suspicion. Terry makes it clear that law enforcement officers are due some degree of deference because of professional judgment developed across the span of numerous encounters with the public and also as a function of their need to protect themselves and the public from the danger inherent in any citizen-police encounter. Terry, 392 U.S. at 30 (noting that a limited search is reasonable "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous"). Officer Pereira, with approximately two and one half years experience patrolling the high crime neighborhood where he encountered defendant, and having been assaulted during encounters with citizens in the area, recognized signs of an "adrenalin dump" in defendant's behavior. Such signs support the reasonable inference that defendant was panicked by his encounter with law enforcement because defendant had engaged or was about to engage in criminal activity, and also authorized his decision to handcuff defendant. In short, the totality of circumstances lead to the inescapable conclusion that Officer Pereira's detention of defendant did not violate defendant's Fourth

Amendment rights.

One coda is necessary in that defendant is now charged not with trespassing or with violating North Carolina General Statute § 14-223 but with being a felon in possession of the firearm that was found in his back pocket on March 21, 2007. Defendant's motion requests that the court suppress both the handgun and defendant's statements made when he admitted that there was a gun in his pocket. Based on Officer Pereira's professionalism and testimony, it appears a foregone conclusion that, had defendant not admitted to the gun, it nonetheless would have been located in a subsequent pat-down. Regardless defendant, while legally detained, voluntarily provided the information that led to discovery of the firearm on his person. For that reason alone the gun is admissible. Defendant's statements, voluntarily given, are also admissible.

For these reasons, the court accepts the majority of the magistrate judge's findings and recommendations. Accordingly defendant's motion to suppress (DE #14) is DENIED.

SO ORDERED, this the 26th day of November, 2007.

LOUISE W. FLANAGAN
Chief United States District Judge